UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Melissa Clendenen in her
capacity as Personal Representative
of the Estate of Brian Clendenen,

        Plaintiff,

                                        **MEMORANDUM OPINION
                                        AND ORDER**
    v.                                      Civil No. 10-2217 ADM/FLN

Health Care Service Corporation
d/b/a Blue Cross Blue Shield of Illinois,

        Defendant.

_____

Norman J. Baer, Esq., Steven C. Kerbaugh, Esq., and Brooke D. Anthony, Esq., Anthony Ostlund Baer & Louwagie P.A., Minneapolis, MN, on behalf of Plaintiff.

Steven W. Wilson, Esq., Ellen A. Brinkman, Esq., Briggs and Morgan, P.A., Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On February 10, 2011, the undersigned United States District Judge heard oral argument on Brian Clendenen's ("Clendenen") Motion for Partial Summary Judgment[1] [Docket No. 15] and Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois' ("BCBS") Motion for Summary Judgment [Docket No. 21]. Clendenen brought this action pursuant to the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, alleging that Defendant violated ERISA by denying him benefits. For the reasons set forth

---

[1] Brian Clendenen died on December 18, 2010. At the time of oral argument, Plaintiff's attorneys had not yet filed a motion to substitute a party. On March 4, 2010, the parties stipulated to substitute Brian Clendenen's wife and the personal representative of his estate, Melissa Clendenen [Docket No. 45].

below, Defendant's Motion is granted and Plaintiff's Motion is denied.

## II.  BACKGROUND[2]

Clendenen was a beneficiary of an ERISA employee welfare benefits plan sponsored by Melissa Clendenen's employer, Synovate, Inc. ("Synovate").  Compl. [Docket No. 1] ¶ 11. BCBS provides claims administration services to the Synovate plan (the "Synovate Plan").  See id. ¶ 12.

In December 2009, Clendenen suffered a stroke that paralyzed the right side of his body and created impediments to his speech, mobility, and day-to-day activities.  Id. ¶ 7.  On February 13, 2010, Clendenen was admitted to Methodist Hospital for pain.  Id. ¶ 8.  On February 23, 2010, Clendenen was discharged from Methodist Hospital and admitted to Courage Center, a rehabilitation facility that has a written agreement with BCBS to provide inpatient rehabilitative services to Synovate's employees and dependents.  See id. ¶¶ 9, 11, 13.

Clendenen's initial assessment at Courage Center revealed that he: (1) required maximum assistance for mobility and transfers; (2) was "unable to stand or ambulate;" (3) was "dependent with bathing, toileting, showering;" and, (4) required "moderate assist[ance] with grooming/hygiene and feeding."  Wilson Aff. [Docket No. 24] Ex. C at D00016, D00017, D00019.  While at Courage Center, Clendenen received physical, speech, and occupational therapy, and medical treatment for his pain.  Compl. ¶ 10.  An assessment completed on March 16, 2010 stated that Clendenen had shown: (1) "moderate improvements in his overall mobility;" (2) "moderate improvement" with respect to transfers and bed mobility; and, (3) "minimal

---

[2] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  As both parties have moved for summary judgment, any disputed facts are noted.

improvement" on his balance and postural control. Wilson Aff. Ex. C at D00022. The assessment further stated that Clendenen "continues to demonstrate significant [range of motion] limitations," that his "independence continues to be limited by pain, weakness and impairments in body awareness," and that the challenges he faced "contribute to decreased independence with functional mobility." Id. Another assessment completed on March 17, 2010 noted that Clendenen has "respondod [sic] well and demonstrates some activation of extensors." Id. at D00025. The assessment further noted that Clendenen had demonstrated "minimal improvement" with respect to daily activities and required "moderate to max[imum] assist[ance] with showering and moderate assist[ance] with upper body dressing, max[imum] assist[ance] with lower body dressing" and "moderate assist[ance] with grooming/hygiene tasks." Id. at D00025, D00026.

On or about April 7, 2010, Clendenen was advised that BCBS would no longer cover his expenses for inpatient skilled nursing care at Courage Center. On April 8, 2010, Dr. David W. Stein, Medical Director, wrote in a letter to Clendenen:

> **Benefits for the service(s)/procedure(s), as described below, have not been approved.**
>
> . . .
>
> Reason: Lack of Medical Appropriateness
>
> The clinical rationale for the non-certification:
>
> Based on the clinical information submitted, it has been determined that the health care services could be provided in a more efficient and economical setting . . . . Alternative settings could include: Nursing Home setting. This decision was based on the following: Based on the clinical information provided, the member is not able to meet the set goals and has plateaued in their [sic] functional status. . . . The source of criteria utilized as guidelines in making this decision:

      Milliman Careguide.

Ex. D at CLEN000219. Further, the notice of denial stated, "a copy of the rule, guideline or a summary of the specific clinical review criteria upon which this determination was based, will be provided free of charge upon request." Id. at CLEN000220.

      On or about April 12, 2010, Clendenen appealed BCBS' decision. In support of Clendenen's appeal, Dr. Terrence Dunklee, Clendenen's treating physician at Courage Center, contacted Dr. Stein by phone and by letter expressing his disagreement with Dr. Stein's conclusion and stating that Clendenen had made "significant progress in terms of pain control" and improvement in "rolling and body movement transitioning" and independence in day-to-day activities. Kerbaugh Aff. [Docket No. 18] Ex. 1 at D.

      Clendenen then retained counsel who contacted BCBS on at least two occasions requesting a copy of the Milliman Careguide used in rendering BCBS' decision to deny further services at the Courage Center. Id. Exs. 6 and 7. On May 7, 2010, Clendenen's counsel provided additional documents to BCBS including letters from his treatment specialists who stated that as a result of Clendenen's physical therapy efforts, he had made "improvements in range of motion and strength" including his "ability to assist with transfers and bed mobility (rolling and sit to/from supine transition)" and "tolerance to being upright and/or out of bed." Wilson Aff. Ex. H at D00039.

      On May 12, 2010, BCBS upheld the original denial stating "[a] physician who specializes in Physical Medicine and Rehabilitation, who had no involvement in the original denial, reviewed [Clendenen's] request along with the available clinical information" and determined that:

4

> None of the following dates of service (4/7/10 onwards) were medically necessary in the [skilled nursing facility] setting of care. The continued [skilled nursing facility] level of care (LOC) from 4/7/10 onwards was not medically necessary since the patient could have been discharged to a lesser LOC with his progress at a plateau. [Clendenen] was medically stable and had no skilled nursing cares as well.
>
> [Clendenen] had remained at moderate to maximum assistance for mobility, transfers, and activities of daily living (ADLs) and was ambulating with [skilled nursing facility] LOC from 4/7/10 onwards. Given this information, diagnosis, and level of function at a plateau, the medical need for the continued [skilled nursing facility] LOC 4/7/10 onwards is not established when cares can be done at a lesser LOC. Therefore, none of the following dates of service (4/7/10 onwards) was medically necessary in the [skilled nursing facility] setting of care.

Kerbaugh Aff. Ex. 10 at CLEN000281-CLEN000282. The letter further stated that the physician-reviewer "attempted to discuss [Clendenen's] information with the attending physician but no return call was made within the mandated time for expedited/concurrent appeal." Id. at CLEN000281.

On May 19, 2010, arguing that BCBS had not considered the additional materials relevant to the appeal, Clendenen's counsel resubmitted the documentation. See id. Ex. 15. On May 26, 2010, BCBS notified Clendenen that the additional documentation did not change BCBS' determination to deny coverage at Courage Center (a "skilled nursing facility") from April 7, 2010 onward. Id. Ex. 17. The letter reiterated that the physician-reviewer "made two attempts to discuss [Clendenen's] situation with the attending physician" but the "[c]alls were not returned during the time allotted to concurrent services expedited appeal process." Id.

5

On June 1, 2010, Clendenen filed this lawsuit seeking declaratory and injunctive relief[3] and damages.  On December 30, 2010 Clendenen filed a partial motion for summary judgment and BCBS filed a motion for summary judgment.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig, 54 F.3d at 470.  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.  Denial of Benefits**

**1.  Standard of Review**

ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.  29 U.S.C. § 1132(a)(1)(B).  "Where a plan gives the administrator discretionary power to . . . make eligibility determinations . . . the administrator's decision is reviewed only for

---

[3] As a result of Clendenen's death, the parties have stipulated that the claims for declaratory and injunctive relief should be dismissed.

'abuse . . . of his discretion'" by the district court.  King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)).  Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious.  Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 896-97 (8th Cir. 2009).  However, a less deferential standard applies if a party presents evidence demonstrating that "(1) a palpable conflict of interest or serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [the beneficiary.]" Woo v. Deluxe Corp., 144 F.3d 1157, 1169 (8th Cir. 1998).

A conflict of interest exists when a plan administrator holds the dual role of evaluating and paying benefits claims, such as when the employer both determines eligibility for benefits and pays the benefits.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008).  Plaintiff initially argued that a conflict of interest existed because BCBS was both adjudicating claims and paying awarded benefits.  Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. [Docket No. 17] at 20-22. After learning that the Synovate Plan is self-funded, Plaintiff appears to have retreated from that argument, but now contends that "[e]ven if BCBS was not the ultimate payor for Clendenen's inpatient skilled rehabilitative therapy, BCBS was presumptively interested in maintaining its Synovate account and the profit that it received from Synovate.  Recognizing that BCBS thus had a financial incentive to curry Synovate's favor by keeping its costs down, BCBS was presumptively operating under a conflict of interest regardless of who ultimately picked up the bill for Clendenen's treatment." Mem. in Opposition to Def.'s Mot. for Summ. J. [Docket No. 29] at 8-9.

Glenn's rationale was premised on the fact that "every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket." Glenn, 554 U.S. at 112 (quoting Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 144 (3d Cir. 1987)). The conflicted entity could be the employer or an insurance company, as long as it was the same entity that made the benefits determination and paid out benefits. In this case, Plaintiff is arguing that a third party administrator is a conflicted entity merely because it is in a business relationship with the employer and presumably makes decisions that benefit the employer rather than the plan participants, hoping to preserve the business of the employer.

This argument was squarely rejected by the Sixth Circuit in Morris v. Am. Elec. Power Long-Term Disability Plan, 399 F. App'x 978 (6th Cir. 2010). In Morris, the plaintiff argued that a third-party administrator was a conflicted entity when it makes decisions that benefit the employer rather than the plan's beneficiaries "on the belief that, in doing so, they will be able to attract new and continued business, thus eventually lining their own pockets." Id. at 982. But as the Sixth Circuit stated,

> Such an accusation is critically distinct from the inherent conflict of interest present when a decision maker will benefit or suffer as a direct consequence of her decisions. Because [the plan administrator's] theoretical advantage from making benefit denials would be neither immediate nor guaranteed, it cannot be said to be 'inherent' in the way that a conflict is when the same entity is responsible for both benefits eligibility determinations and benefits payments.

Morris, 399 F. App'x at 982.

As in Morris, the alleged conflict here is not the conflict recognized in Glenn, i.e. the

8

decision maker directly suffers or benefits from its decision to pay or deny benefits. The conflict perceived in this case, if one exists, is not a direct, immediate, or guaranteed consequence, but only a hypothetical outcome of benefit denials. Id. Accepting Plaintiff's argument would mean that a conflict of interest arises in every situation involving a third party administrator. However, it is the very absence of a third party administrator that gives rise to a conflict. See id. at 983. Third party administrators serve the important role of evaluating individual claims on the merits and making benefits determinations that accord with the terms of the plan which results in controlling costs for both the employer and plan beneficiaries.

Moreover, even if BCBS operated with conflicting interests, as Plaintiff argues, this would not alter the standard of review. Rather, Glenn directs courts to "take into account several different considerations" when evaluating the deference to be afforded a plan administrator's decision, "of which a conflict of interest is one." Glenn, 554 U.S. at 117. After reviewing the evidence, the Court is not persuaded that the alleged conflict here has any legal effect.

Plaintiff next argues that there were serious procedural irregularities that affected BCBS' decision to terminate Clendenen's benefits at Courage Center that justify a less deferential standard of review. Specifically, Plaintiff alleges that BCBS failed to: (1) provide him with adequate information concerning the reasons for the claim denial including a failure to provide him with a copy of the Milliman Careguide, the source on which the determination was based, and (2) review documents relevant to Clendenen's appeal.

Plaintiff argues that BCBS' denial was deficient because it failed to cite the specific plan provision on which the denial was based. However, the final denial letter specifically states that skilled nursing facility care from April 7 onward was "not medically necessary." While Dr.

9

Stein's initial denial letter did not use that specific phrase, the initial denial is not relevant here. See Galman v. Prudential Ins. Co. of America, 254 F.3d 768, 770-71 (8th Cir. 2001) ("the reviewing court reviews the claims administrator's final decision to deny a claim, rather than the initial denial"). Rather, the operative decision to review is BCBS' denial of Clendenen's appeal, i.e., BCBS' final decision. Even if the initial denial were relevant, it used the phrase "Lack of Medical Appropriateness" which sufficiently placed Clendenen on notice of the reason for the denial. Under these circumstances, there is no support for Plaintiff's assertion that BCBS' failure to use a precise term constituted a serious procedural irregularity.

Next, the record does not support Plaintiff's claim that BCBS failed to consider documents relevant to the appeal. To the contrary, BCBS' May 26, 2010 letter to Clendenen reaffirming its initial denial specifically states that the "additional records . . . do not change the prior review." Plaintiff's dissatisfaction with BCBS' further review is a separate issue from whether the review actually occurred.

Plaintiff also argues that BCBS' independent examiner, Dr. Clay Miller, reviewed 360 cases for BCBS in the last seven years and denied benefits in ninety percent of those cases. Aside from the accusation that Dr. Miller serves as a "rubber-stamp" for BCBS' denial of claims, Plaintiff provides no evidence that Dr. Miller's decisions were either incorrect or not supported by the weight of evidence in the record, nor is any evidence proffered that BCBS itself "has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 968-69 (9th Cir. 2006).

Finally, even assuming a serious procedural irregularity occurred, "[t]he mere assertion

10

of an apparent irregularity, without more, is insufficient to give rise to heightened review." Kesco v. Meredith Corp., 480 F.3d 849, 852 (8th Cir. 2007) (internal quotation omitted). Rather, a plaintiff must show that the irregularity had some connection to the substantive decision to deny benefits. See Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 679 (8th Cir. 2005). The evidence must give rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 768 (8th Cir. 2000). This requirement "presents a considerable hurdle" that few plaintiffs surpass. Id. While the parties vigorously dispute whether BCBS' decision was reasonable, there is no evidence that BCBS "failed to inquire into the relevant circumstances at issue, or never offered a written decision that can be reviewed, or committed irregularities so severe that the court 'has a total lack of faith in the integrity of the decision making process.'" Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 838 (8th Cir. 2006) (citing Buttram v. Centr. States, Se. and Sw. Areas Health and Welfare Fund, 76 F.3d 869, 900 (8th Cir. 1996)). Rather, the issue is whether the record supports BCBS' exercise of judgment to deny Clendenen benefits, and thus, the normal standard of review is appropriate.

**2. Substantive Review**

Under the abuse of discretion standard, a court must uphold the plan administrator's decision if it was "reasonable" or supported by "substantial evidence." McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). Substantial evidence is more than a scintilla but less than a preponderance. Leonard v. Sw. Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003). A reasonable decision will not be overturned, even if the court would have interpreted the language differently in the first instance. Id.; see also Rutledge v.

Liberty Life Assurance Co., 481 F.3d 655, 659 (8th Cir. 2007) ("[W]e must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.").

The Court's review of the record shows that BCBS terminated Clendenen's benefits because it determined that Clendenen's medical issues had stabilized and his functional status permitted a safe transfer to a lesser level of care. First, BCBS reasonably concluded that Clendenen's medical condition had stabilized. Indeed, Dr. Dunklee's report of April 14, 2010 does not discuss any of the medical issues that had plagued Clendenen upon his admission to Methodist Hospital and shortly thereafter to Courage Center. By April 7, 2010, Clendenen's clinical records prepared by his treating physician and treatment specialists evince that, after several weeks of skilled nursing care, he had made moderate improvements with respect to pivoting, transfers, and overall mobility, but that he demonstrated minimal improvements with respect to day-to-day activities. Additionally, BCBS' outside peer reviewer who was board certified in physical and rehabilitative medicine and not involved in the initial claim denial reviewed Clendenen's medical records and concluded that coverage at the skilled nursing facility level of care after April 7 was not established. Based on this information, BCBS could reasonably conclude that ongoing care at the skilled nursing facility level of care was not necessary, and that terminating such coverage was justified.

Plaintiff responds that the motivation for BCBS to terminate Clendenen's coverage was because he was purportedly "custodial" under the definition of the Synovate Plan, but that his medical records and the opinions of those treating him belie this claim. The term "custodial" is defined in the Synovate Plan as "primarily for personal comfort or convenience that provides

general maintenance, preventative, and/or protective care without any likelihood of improvement of your condition." Kerbaugh Aff. Ex. 2 at 15. Plaintiff *argues* that BCBS terminated Clendenen's coverage at Courage Center on the basis that he was "custodial," yet nowhere in the initial denial letter[4] or the final denial letter[5] does BCBS even use that term. There is simply no record evidence to support Plaintiff's assertion. A review of the denial letters reveals that BCBS terminated Clendenen's coverage because continued care at Courage Center was not medically necessary after Clendenen was medically stable, his progress had plateaued, and he could be discharged to a lesser level of care.

Next, Plaintiff contends that BCBS should have continued his benefits at the Courage Center because he was making significant gains as set forth in the opinions of his treatment specialists and treating physician, Dr. Dunklee. Dr. Dunklee wrote:

> It is my opinion that if [Clendenen] continues to receive skilled therapy, including regular occupational and physical therapy, there is the potential that he will further regain independence and have the potential to return home and take care of himself with the assistance of his wife.
>
> There are three potential outcomes for Brian. First, he could return home in his current condition, which would likely lead to regression of his physical condition and becoming bedridden. Second, he could enter custodial care in a facility where a trained individual could assist him with his range of motions. Such an outcome may maintain the *status quo* and prevent his condition from regressing, but it is unlikely to lead to further gains. Third, he could continue skilled therapy administered by professional

---

[4] Again, the initial denial letter is not relevant, but is nevertheless mentioned to underscore that the term "custodial" was not used by BCBS. The relevant text of the initial denial letter is set forth in the "Background" section above.

[5] The relevant text of the final denial letter is set forth in the "Background" section above.

> therapists at a treatment facility such as Courage Center. I find it
> likely that the third option is the only one that has the potential to
> lead to improvements in Brian's condition. It is the only option
> that has the potential to lead to Brian's desired outcome, which is
> to return home.

Kerbaugh Aff. Ex. 1 at D. Dr. Dunklee's letter did not consider the possibility of Clendenen receiving skilled therapy on an outpatient basis. Rather, Dr. Dunklee's letter was silent on this crucial point. While Plaintiff attempts to portray BCBS' decision as one to discontinue skilled therapy entirely, BCBS' decision was merely a determination that "the health care services could be provided in a more efficient and economical setting."

Even giving Dr. Dunklee's letter a liberal reading does not alter the conclusion that BCBS' decision was reasonable. Although Plaintiff argues that the BCBS physicians who reviewed Clendenen's medical file never physically examined him, BCBS was not obligated to accept Dr. Dunklee's assessment over that of the reviewing physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators [of ERISA plans] automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.") (footnote omitted); see also Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (stating that plan administrator was not required to accept treating physician's assessment over that of a reviewing physician).

While Plaintiff repeatedly asserts that BCBS erred in denying coverage, the Court is constrained by the abuse of discretion standard. As noted above, there is ample evidence of record to support BCBS' decision to credit the opinions of its reviewing physicians over

14

Clendenen's treatment professionals.  Therefore, BCBS did not abuse its discretion when it discontinued Clendenen's coverage for inpatient skilled therapy at Courage Center.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 21] is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment [Docket No. 15] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 14, 2011.